[Civ. No. 21409. First Dist., Div. One. Nov. 7, 1963.]

GLORIA MAE HILSENBERG LEVERETT, Petitioner, v. THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent; ERNEST B. HILSENBERG, Real Party in Interest.

Brown & Taber and Jacqueline Taber for Petitioner.

No appearance for Respondent.

Stewart & Tuttle and Robert W. Tuttle for Real Party in Interest.

MOLINARI, J.—Petitioner, Gloria Mae Hilsenberg Leverett, hereinafter referred to as Gloria, seeks through prohibition to prohibit respondent, the Superior Court of Alameda County, from assuming jurisdiction to hear the motion of the real party in interest, Ernest B. Hilsenberg, hereinafter referred to as Ernest, to modify a California judgment estab-

lishing a Washington decree as a foreign judgment. An alternative writ of prohibition, based upon Gloria's petition, was issued by this court, and we now proceed upon the order to show cause thereon to determine whether an order should be made permanently restraining respondent from taking any further proceedings on said motion for modification.

### The Facts

The background facts are as follows: In 1958, a superior court in the State of Washington granted a divorce in favor of Gloria and against Ernest. The Washington court awarded $200 per month as alimony for Gloria's support and $150 per month for the support of each of the four minor children of the parties, and made provision for mortgage payments and attorney fees. Subsequently, Gloria remarried and became Mrs. Leverett. Ernest thereafter moved to California. In 1961, Gloria commenced an action in the Superior Court of Alameda County to establish the Washington decree as a foreign judgment. A judgment was granted on October 25, 1961, decreeing that the foreign judgment be established as a judgment in this state, ordering the payment of deficiencies, and, pursuant to a stipulation of the parties, modifying the child support and visitation provisions of the original Washington decree.

Thereafter, Gloria's attorney formally withdrew as attorney of record. On March 22, 1962, Ernest filed a notice of motion for an order modifying the judgment rendered in the Alameda County Superior Court on October 25, 1961.[1] Since Gloria no longer had any attorney of record in the action, and inasmuch as she and the children of the parties were residents of the State of Washington, service was made on Gloria, pursuant to section 1015 of the Code of Civil Procedure.[2] Thereafter, Gloria appeared specially to object to the court's jurisdiction to hear Ernest's motion. The said motion objecting to the jurisdiction of the Alameda County Superior Court was denied, whereupon these proceedings ensued.

### QUESTION PRESENTED

The sole question presented is whether respondent

---

[1]The nature and extent of the modification sought does not appear in the record.

[2]Section 1015 of the Code of Civil Procedure in pertinent part provides: "When a plaintiff or a defendant, who has appeared, resides out of the State, and has no attorney in the action or proceeding, the service may be made on the clerk or on the judge where there is no clerk, for him."

court has jurisdiction to hear and determine, upon the merits, Ernest's motion to modify the judgment rendered in said court on October 25, 1961. Gloria contends that respondent court does not have continuing jurisdiction to further modify the support provisions of the foreign judgment, established as a judgment in this state, without first gaining personal jurisdiction over Gloria.

### Jurisdiction of the California Court

In *Worthley* v. *Worthley*, 44 Cal.2d 465 [283 P.2d 19], it was held "that foreign-created alimony and support obligations are enforceable in this state"; and that "[i]n an action to enforce a modifiable support obligation, either party may tender and litigate any plea for modification that could be presented to the courts of the state where the alimony or support decree was originally rendered."[3] (P. 474.) The facts of the *Worthley* case are analogous to the facts of the instant case up to the point of the establishment of the foreign decree in this state. The California Supreme Court, relying upon United States Supreme Court decisions which are cited in its opinion, there upheld the right in the plaintiff wife to seek a judgment in California, where the defendant husband was then residing, for accrued support payment arrearages under a New Jersey separate maintenance decree, for the establishment of said decree as a California decree, and for an order that the defendant pay the support payments specified in the New Jersey decree until further order of the court. We quote from the opinion in *Worthley* as follows: "Moreover, there is no valid reason, in a case in which both parties are before the court, why the California courts should refuse to hear a plaintiff's prayer for enforcement of a modifiable sister-state decree and the defendant's plea for modification of his obligations thereunder. If the accrued installments are modified retroactively, the judgment for a liquidated sum entered after such modification will be final and thus will be entitled to full faith and credit in all other states. [Citation.] If the installments are modified prospectively, the issues thus determined will be res judiciata so long as the circumstances of the parties remain unchanged.

---

[3]Insofar as the question of modification is concerned, *Worthley* disapproves *Biewend* v. *Biewend*, 17 Cal.2d 108 [109 P.2d 701, 132 A.L.R. 1264]; *Barns* v. *Barns*, 9 Cal.App.2d 427 [50 P.2d 463], and *Handschy* v. *Handschy*, 32 Cal.App.2d 504 [90 P.2d 123], which hold that while a foreign decree can be enforced in this state it can only be modified in the state of rendition.

[Citations.]" (P. 473.) We quote further from *Worthley*: "It [the United States Supreme Court] has also clearly indicated that as to either prospective or retroactive enforcement of such obligations, this state 'has at least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the State where it was rendered.' [Citation.]" P. 469.)

In *Herczog* v. *Herczog*, 186 Cal.App.2d 318 [9 Cal.Rptr. 5], the court applied the principles announced in *Worthley*, and held that an English judgment of separate maintenance was enforceable in this state, and that in the action to enforce it, the California court had the same right to modify it prospectively or retroactively as the court which rendered the judgment would have had had the action been brought in that court.

In the case at bench, it is undisputed that the Washington decree is modifiable prospectively. Moreover, taking judicial notice of the laws and decisions of other states as we are permitted to do (Code Civ. Proc., § 1875, subd. 3), we note that the statutory and case law of the State of Washington is similar to that of California as pertains to the prospective modification of decrees of divorce and decrees providing for the support and custody of children. (Rev. Code of Wash., § 26.08.110; see *Schaefer* v. *Schaefer*, 36 Wn.2d 514 [219 P.2d 114]; *Berry* v. *Berry*, 50 Wn.2d 158 [310 P.2d 223]; *Malfait* v. *Malfait*, 54 Wn.2d 413 [341 P.2d 154]; and see Cal. Civ. Code, §§ 138, 139.) It is conceded by petitioner, moreover, that at the time she sought to enforce and establish the Washington decree in California she thus submitted herself to the jurisdiction of this state and that the Alameda County Superior Court had personal jurisdiction over both parties. The argument here advanced by Gloria is that in enforcing and establishing the Washington decree in California, she did exactly what the *Worthley* case said could be done. She urges, however, that *Worthley* is not authority for a principle of law which gives continuing jurisdiction to the California courts to modify a foreign judgment established in California once the judgment has been established and the spouse seeking such establishment has returned to his or her home state. It is also Gloria's contention that even though she submitted herself to the jurisdiction of this state to have said decree modified, the jurisdiction of California ceased once the modification was completed and she returned to her domicile in the State of Washington. It is apparently Glo-

ria's assertion that a spouse resident in another state may make sporadic legal forays into this state to establish and enforce a foreign decree and, upon achieving the desired result, retreat with impuntiy to the foreign jurisdiction. The effect of this assertion is that a foreign resident may at will condescend to give "temporary jurisdiction," only, to this state—a jurisdiction which continues only so long as such spouse chooses to litigate in the California forum.

The issue in the present case thus boils down to whether, once the foreign decree is established as a California judgment and the issue of modification has once been litigated, the California court retains jurisdiction to further modify the decree upon the application of one of the parties. ▮ It should be pointed out, primarily, that the argument advanced by Gloria fails to recognize that, by virtue of its establishment in California as a foreign judgment, in full force and effect, the Washington judgment became a California judgment for the purpose of enforcement in this state. (Code Civ. Proc., §§ 1913, 1915; *Biewend* v. *Biewend,* 17 Cal.2d 108, 113-114 [109 P.2d 701, 132 A.L.R. 1264]; *Creager* v. *Superior Court,* 126 Cal.App. 280, 282-283 [14 P.2d 552]; *Jones* v. *Summers,* 105 Cal.App. 51, 53 [286 P. 1093].) By establishing it as a decree of the California court the foreign decree has the same effect as if it had been entered in this state. (*Worthley* v. *Worthley, supra,* p. 469; *Biewend* v. *Biewend, supra,* p. 113.) It should also be noted, moreover, in the present case that the California judgment provides that "this Judgment may, and shall be established in the State of Washington as a foreign judgment, to wit, a judgment of the sister state of California, in full force and effect, and all parties hereto and their respective counsel, are ordered to execute any and all documents, and to perform any and all acts, necessary to carry out and execute this order of this Court."[4]

▮ It is well established in this state that a sister-state alimony judgment established in California as a judgment is a continuing judgment and that it may be enforced as such. (*Creager* v. *Superior Court, supra,* p. 283; *Straus* v. *Straus,* 4 Cal.App.2d 461, 463 [41 P.2d 218, 42 P.2d 378]; *Palen* v. *Palen,* 12 Cal.App.2d 357, 358 [55 P.2d 228]; *Bruton* v. *Tearle,* 7 Cal.2d 48, 55-56 [59 P.2d 953, 106 A.L.R. 580].)

[4]Both parties, through their counsel, endorsed on said judgment their approval as to form.

Such a judgment may be enforced in the same manner that it could have been enforced if originally obtained in this state. (*Creager* v. *Superior Court, supra,* p. 283; *Palen* v. *Palen, supra,* p. 358; *Bruton* v. *Tearle, supra,* pp. 55-56; *Worthley* v. *Worthley, supra,* p. 469; *Hopkins* v. *Hopkins,* 46 Cal.2d 313, 316 [294 P.2d 1].)

■ ■ Concerning orders made by another state, dealing with the care, custody and support of a minor child, such an order may likewise be enforced in California if it is established as a foreign judgment in this state. (*Anthony* v. *Tarpley,* 45 Cal.App. 72, 79 [187 P. 779].) Such orders are ancillary to the suit for divorce in which jurisdiction of the parties has been properly acquired. (*Dolgoff* v. *Dolgoff,* 81 Cal. App.2d 146, 150 [183 P.2d 380].) Accordingly, a court may make a decree for the custody, support and maintenance of a nonresident child, and it may modify such a decree, where the parents have submitted to the jurisdiction of the court. (*Dolgoff* v. *Dolgoff, supra,* p. 150.) ''[T]he absence of the minor child from this state during the trial and subsequent proceeding for maintenance is immaterial.'' (*Dolgoff* v. *Dolgoff, supra,* p. 150·) The rationale of *Dolgoff,* and the cases upon which it relies, is that while the child is not formally a party to the divorce action between its parents, the child appears before the court because of the fact that its parents, who are in court, submit to the court the determination of who, as between the parents, should have custody or control of the child or who should support it. California accordingly follows the rule that when a court has acquired jurisdiction of the parties to a divorce suit it retains ancillary jurisdiction to modify the decree of divorce by awarding to either spouse the custody or necessary maintenance of the minor child, for its best interest, even though one of the spouses has acquired a residence with the child in another state. (*Dolgoff* v. *Dolgoff, supra,* p. 148; *In re Kolb,* 60 Cal. App. 198, 200 [212 P. 645] ; see *Sampsell* v. *Superior Court,* 32 Cal.2d 763, 779-780 [197 P.2d 739] ; *Starr* v. *Starr,* 121 Cal.App.2d 633, 635 [263 P.2d 675], and *Worthley* v. *Worthley, supra,* p. 474.) In *Sampsell,* our Supreme Court stated as follows: ''If the decrees of California courts with respect to child custody are subject to modification or annulment in this state, they are likewise subject to modification or annulment in any state having jurisdiction over the subject matter, for such a decree 'has no constitutional claim to more conclusive or final effect in the State of the forum tha*t* it has in the State where rendered.' [Citations.] '' (P. 780.)

█ It is now the settled law and policy of California that foreign-created alimony and support obligations, as well as child custody awards, when established as a foreign judgment in this state, may be both enforced and modified in the California forum. As we have pointed out above, our courts have continuing jurisdiction to enforce such foreign judgment in the same manner as it could have been enforced if originally obtained in this state. Accordingly, it may be enforced by contempt proceedings, by execution, and by proceedings supplemental to execution. (See *Bruton* v. *Tearle*, *supra*, 7 Cal.2d 48, 56.) █ By virtue of the rule announced in *Worthley*, the California courts may modify such a modifiable sister-state decree established in this state. That right is not merely one which may be urged only at the time the foreign judgment is sought to be established in this state, but a continuing right which attaches to the California forum by reason of the submission of the foreign decree to the jurisdiction of this state. It is the judgment so established which has continuity. Implicit and inherent in such a continuing judgment is its enforceability and modifiability. This is the plain meaning of the principle announced in *Worthley*—a principle which places a modifiable sister-state decree, established as a judgment in this state, on the same footing as a domestic decree, concerning which there is no question that our courts have the continuing jurisdiction to prospectively modify. (Civ. Code, §§ 138, 139.) There is no more finality to the California judgment enforcing the foreign decree than there is to a domestic decree originally rendered by the California courts. (*Sampsell* v. *Superior Court*, *supra*, 32 Cal.2d 763, 779-780.) Accordingly, there is no logical reason why the California court does not have continuing jurisdiction to further modify the foreign decree so established as a judgment in this state upon the application of one of the parties. █ Once the decree has been modified prospectively "the issues thus determined will be res judicata so long as the circumstances of the parties remain unchanged." (*Worthley* v. *Worthley*, *supra*, p. 473.) However, upon a change of circumstances, the continuing decree should be modifiable upon application of either party either in this state or in the original rendering state. (*Worthley* v. *Worthley*, *supra*, p. 473; *Leathers* v. *Leathers*, 162 Cal.App.2d 768, 772-773 [328 P.2d 853]; *Sampsell* v. *Superior Court*, *supra*, p. 779; see 42 Cal.L.Rev. (1954) pp. 382, 393-394.) █ In

⁵The jurisdiction of the forum and the state of rendition is said to be

view of such continuing jurisdiction, either party may apply in this state to have such decree modified by giving notice to the opposing party of the motion to modify, so as to satisfy the procedural due process requirement of permitting the opposing party an opportunity to litigate the plea for modification and to present any available defenses. (*Worthley* v. *Worthley, supra,* pp. 469, 471.)

In view of the continuing jurisdiction of the California court relating to such applications for modification, service in the technical sense is not required, but actual notice is sufficient. (*Lewis* v. *Lewis,* 49 Cal.2d 389, 396 [317 P.2d 987]; see *Griffin* v. *Griffin,* 327 U.S. 220, 228 [66 S.Ct. 556, 90 L.Ed. 635, 640].) Accordingly, the question is not whether the party in opposition to the motion to modify has been served or appeared, but whether he had notice. (*Lewis* v. *Lewis, supra,* p. 396; *Reynolds* v. *Reynolds,* 21 Cal.2d 580, 583 [134 P.2d 251].) In *Lewis,* it was held that the Illinois court, having acquired jurisdiction of the subject matter and of the parties in a divorce action brought by the husband, retained jurisdiction to modify and enforce its support order and therefore had jurisdiction to enter a supplemental judgment order fixing the amount of accrued arrearages, provided the husband had actual notice of the proceedings culminating in that order.

 We hold in the case at bench that the Alameda County Superior Court, having acquired jurisdiction over the subject matter encompassed in the foreign decree and of both Gloria and Ernest, has jurisdiction to modify such decree as established in this state, even though Gloria has left the state. Since California has continuing jurisdiction to modify such decree, Gloria cannot avoid such jurisdiction by reason of her having left this state and discharging her California attorney. (See *Reynolds* v. *Reynolds, supra,* p. 583.) It is conceded in the instant case that Gloria had actual notice of the modification proceedings. That she had such notice is clear because she appeared specially to contest the Alameda County Superior Court's jurisdiction. Such notice was imparted to her by virtue of section 1015 of the Code of Civil Procedure. This statutory provision for the giving of notice has been held to be constitutional on the basis that the Legislature may provide that, once the court has jurisdiction over the subject matter of a proceeding and over the person

---

"concurrent." (See *Leathers* v. *Leathers, supra,* p. 772; *Sampsell* v. *Superior Court, supra,* pp. 778-779.)

of the party affected, it may bind such person by orders made after he has left the state. (*Reynolds* v. *Reynolds, supra,* p. 583.) Section 1015 informs parties who have appeared in an action or proceeding in this state that if they have no attorney of record the clerk of the court becomes their agent for the purpose of service. Accordingly, the burden is upon said parties to keep an attorney of record or to make such arrangements for notice with the clerk as they shall deem advisable. (See *Reynolds* v. *Reynolds, supra,* p. 584.)

Gloria argues that "If Civil Code § 138 [139] were interpreted to grant continuing jurisdiction to the California courts to modify a foreign divorce decree which has been established in California, it would permit a husband who has become delinquent to take advantage of his own wrongdoing by forcing his wife to litigate custody and support matters far from the children's and her home." This argument is based upon practical convenience and may not be asserted to defeat the California court's jurisdiction. That jurisdiction was conferred upon the California court by Gloria herself. It was not necessary for her to do so in order to enforce her rights under the Washington decree. She could have availed herself of the provisions of the Uniform Reciprocal Enforcement of Support Act, which has been adopted by both Washington and California. (Rev. Code Wash., §§ 26.21.010-26.21.900; Cal.Code Civ. Proc., §§ 1650-1692.) Gloria elected, instead, to proceed in the manner in which she did proceed, as she had a right to do,[6] and cannot now complain that by so doing she did not intend to give the California court continuing jurisdiction.

The peremptory writ is denied and the alternative writ is discharged.

Bray, P. J., and Sullivan, J., concurred.

---

[6]Section 26.21.020 of the Revised Code of Washington provides, as does section 1654 of our Code of Civil Procedure, that the remedies provided for in the "Uniform Act" are in addition to and not in substitution for any other remedies.